## PATRICIA B. GRODZICKI, FORMERLY KNOWN AS PATRICIA B. QUAST, v. JOHN R. QUAST.

149 N. W. (2d) 8.

February 10, 1967—No. 40,016.

*Farnes, Skaar & Prueter,* for appellant.

*Cummins, Cummins & Gislason, Carl W. Cummins, Jr.,* and *Richard T. McHaffie,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court determining it had no jurisdiction to grant the relief sought in a suit for property settlement,

child support, and attorney's fees and costs instituted here by a wife after she had obtained a divorce in Florida.

Plaintiff and defendant were married in Minneapolis on December 30, 1944. Three children were born of the marriage. All of the property of the parties was acquired during the marriage. Plaintiff through her own savings contributed some money for the acquisition of part of the property, and her parents contributed some of the household goods. The parties had joint savings and checking accounts and held their homestead jointly.

After a hearing at which both parties appeared personally and by their respective attorneys, upon stipulated facts and the pleadings, files, and records the court found that plaintiff was 40 and defendant 46 years of age and that their children's ages were 19, 17, and 16 at the time of the hearing; that in 1958 the parties purchased the homestead in St. Paul for $27,000, of which $12,000 was paid in cash; that at the time of the hearing the mortgage balance thereon was $10,385.27; and that the title to said property was in the name of John R. Quast and Patricia B. Quast (now Grodzicki).[1]

The court also found that early in 1962 the parties experienced some marital unrest; that in August 1962, because of the ill health of the two minor sons of the parties (which fact is agreed upon by the parties), and because of the marital unrest (which is denied by defendant), it was determined that plaintiff and the children should take up a temporary residence in Miami, Florida, which was done that month, when defendant took them to Florida and leased a home for them.[2]

The court further found that in January 1963 plaintiff sued defendant for a divorce in the Dade County, Florida, Circuit Court; that the service of the complaint in said suit was made on defendant by publication; that a copy thereof was mailed and received by defendant; that he did not appear in said action; and that on April 24, 1963, a final decree

---

[1] It appears that the parties agreed as to the valuation of the homestead and that defendant has paid to plaintiff one-half of the equity in said homestead.

[2] According to the proceedings before the court, defendant thereafter returned to St. Paul.

of divorce was granted to plaintiff in the Florida court which read in part as follows:

"ORDERED, ADJUDGED AND DECREED that the plaintiff, Patricia B. Quast, is hereby divorced, a vinculo matrimonii, from the defendant, John R. Quast, and

"The Court reserves jurisdiction for the purpose of entering such further order or orders as may be necessary for the support and maintenance of the minor children, and alimony, and for a division of any joint or mutually held properties." [3]

The findings also recite that plaintiff was married in June 1963 to Erwin Grodzicki and that in the spring of 1964 defendant married his present wife and resides with her in the above-mentioned homestead; also, that since the parties were divorced, defendant has paid plaintiff as support money for the children $100 every month for each child and has paid money from time to time directly to the children.

The court concluded that it had no jurisdiction to order a property settlement requiring defendant to turn over to plaintiff any part of his separately owned property nor to fix support money to be paid by him to plaintiff for their children, "particularly in view of the contributions the defendant has voluntarily made toward the support of said minor children."

The legal issues raised are these: When the marriage of the parties to this action has been dissolved in a suit by plaintiff (former wife) in a Florida court having jurisdiction over the rem (the marriage itself), does a Minnesota court have jurisdiction over defendant (former husband) personally served and residing in Minnesota to make an award for (1) property settlement; (2) support moneys; and (3) attorney's fees and costs?

■ Plaintiff bases her claim for property settlement and support moneys upon Thurston v. Thurston, 58 Minn. 279, 59 N. W. 1017, and Searles v. Searles, 140 Minn. 385, 168 N. W. 133. In each of those cases we held that the district court could grant alimony to a Minnesota woman

---

[3] Plaintiff did not request alimony, custody, support of the minor children, or allowance of costs and suit money or attorney's fees in the Florida action.

whose husband had obtained an ex parte divorce in Washington. We reasoned that the Washington court acquired jurisdiction only over the marriage status and that its judgment was therefore res judicata only as to that status and not as to the wife's right to receive alimony.

Although Thurston and Searles each involved a former wife's claim for alimony rather than for property settlement or child support moneys, the principle is the same—namely, that a divorce by a court with jurisdiction only over the marriage status is no bar to the former wife's claiming property rights against her former husband. See, Cummings v. Cummings, 138 Kan. 359, 26 P. (2d) 440 (property settlement); Stephenson v. Stephenson, 54 Ohio App. 239, 6 N. E. (2d) 1005 (alimony); West v. West, 114 Okla. 279, 246 P. 599 (child support); Nelson v. Nelson, 71 S. D. 342, 24 N. W. (2d) 327 (property settlement); Buckley v. Buckley, 50 Wash. 213, 96 P. 1079 (property settlement).[4]

Defendant seeks to distinguish Thurston and Searles from the present case on the ground that in those cases Minnesota was the state of the wife's residence. In Donigan v. Donigan, 236 Minn. 516, 53 N. W. (2d) 635, we held that a nonresident wife could bring an equitable action in Minnesota for support against her nonresident husband. The fact that the parties in Donigan were still married does not lessen the case's authority for the proposition that the Minnesota courts will take jurisdiction to award relief in cases of domestic difficulties, although the plaintiff is a nonresident.

In the present case there exist factors which would indicate strong interest on the part of the Minnesota courts, to wit, the marriage was performed here; the parties resided here until the marriage became unstable; the former husband still resides here; and the property involved is located here. Courts in other states have assumed jurisdiction of similar actions brought by a nonresident former wife. See, Cummings v. Cummings, *supra* (property settlement); Miller v. Miller, 186 Okla. 566, 99 P. (2d) 515, certiorari denied, 311 U. S. 645, 61 S. Ct. 9, 85 L. ed. 411 (alimony). See, also, Restatement, Conflict of Laws, § 457 (support).

---

[4] In Buckley the court held that the property was to be divided, not in definite proportions but equitably as in a suit under the divorce statute.

Defendant argues that plaintiff, having elected her forum and commenced her action for absolute divorce in Florida, invoked the full jurisdiction of the Florida court. We cannot agree with that argument. All that she asked for in the Florida court was a dissolution of the marriage. She did not ask for a property settlement, child support, or attorney's fees. It is our opinion that the Florida court could not have given such relief had it been asked to do so since it lacked jurisdiction over the husband or his property. Other courts have allowed a former wife to maintain a suit for property settlement or support money despite the fact it was she who obtained the ex parte divorce. See, Cummings v. Cummings, *supra* (property settlement); Stephenson v. Stephenson, *supra* (alimony); West v. West, *supra* (child support); Nelson v. Nelson, *supra* (property settlement); Buckley v. Buckley, *supra* (property settlement).

The fact that the Florida decree contained a provision to the effect that the court retained jurisdiction for the purpose of entering further orders does not bar the district court in Minnesota from accepting jurisdiction in the present matter. It seems to us that the Florida court intended only to keep its doors open to plaintiff, not to foreclose her from seeking relief elsewhere.

Defendant asserts that there is no statutory authority for granting plaintiff the relief she seeks. The only statutes authorizing such relief deal with procedures "[u]pon adjudging the nullity of a marriage, or a divorce or separation," Minn. St. 518.17; "[u]pon a decree of divorce or annulment," §§ 518.56, 518.57; "[u]pon a divorce for any cause, or upon an annulment," § 518.58; and "[u]pon a divorce for any cause," § 518.59. Defendant contends that the statutes are the sole source of the court's power to order the relief requested.

Defendant's contention is without merit. When Thurston and Searles were decided, the only statutory authority for granting permanent alimony was Minn. St. 1949, § 518.22, which provided that it could be granted "[u]pon a divorce." [5]

---

[5] See Paulsen, *Support Rights and an Out-of-State Divorce,* 38 Minn. L. Rev. 709, 725, where it is stated: "[R]ecognition of an inherent equitable power to award support remains the simplest technique employing case law to provide a remedy. No compelling reason exists for holding that the statu-

Although Thurston and Searles were decided before Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, which held that full faith and credit must be given foreign-state divorce decrees, this court's approach under the comity principle of recognizing foreign ex parte decrees only as to their effect on the marital status is still permissible. See, Estin v. Estin, 334 U. S. 541, 68 S. Ct. 1213, 92 L. ed. 1561; Pawley v. Pawley (Fla.) 46 So. (2d) 464, 28 A. L. R. (2d) 1358, certiorari denied, 340 U. S. 866, 71 S. Ct. 90, 95 L. ed. 632; Paulsen, *Support Rights and an Out-of-State Divorce,* 38 Minn. L. Rev. 709, 728.

We have considered cases cited by defendant to the effect that only the court of the children's domicile has jurisdiction to decide who should have their custody and defendant's argument that the same rule should apply as to support-money claims. We cannot agree with this argument. The rule that custody generally may be determined only by the court of the children's domicile does not deprive the parties of an effective forum, but rather ensures them the most appropriate one. A rule that only the court of the children's domicile can order the father to support them would often, as in this case, deprive the children of a forum which could make an enforceable order against the father. A court other than that of the children's domicile may properly enter such an order. See, Restatement, Conflict of Laws, § 457; cf. Donigan v. Donigan, *supra* (support for nonresident wife and child).

It is no defense that defendant has been making certain voluntary payments for the children's support. It is our opinion that where the

---

tory provisions for alimony are exclusive. In some places equitable power has been recognized in respect to matters of alimony and of family support. The exercise of this power is within the spirit of the ancient tradition of equity to find a remedy when a right is given no adequate protection."

See Donigan v. Donigan, 236 Minn. 516, 53 N. W. (2d) 635, where we recognized an equitable suit, apart from the statute and while the marriage subsisted, for support of a wife. Kienlen v. Kienlen, 227 Minn. 137, 34 N. W. (2d) 351, and Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58, cited by defendant, merely hold that a court's powers in proceedings *in a divorce action* are limited to those conferred by statute. The present case is not a divorce action.

record shows that plaintiff is entitled to support money, payment should be ordered rather than requiring her to depend on voluntary payment.

■ Attorney's fees are generally allowed only when authorized by statute.[6] United States Fidelity & Guaranty Co. v. Falk, 214 Minn. 138, 7 N. W. (2d) 398; Smith v. Chaffee, 181 Minn. 322, 232 N. W. 515, and cases cited; 5A Dunnell, Dig. (3 ed.) § 2194. Plaintiff had cited no statute authorizing allowance of attorney's fees in such cases as that at bar, and none has been found.[7] Minn. St. 518.14 authorizes such allowance only in "any action brought either for divorce or separate maintenance." The present case is not such an action.

It is our opinion under the record here that the trial court had jurisdiction to consider this action, and if appropriate, to make an award for property settlement, support moneys, and costs and disbursements.

Reversed and remanded for proceedings in accordance with this opinion.

Mr. Justice Peterson, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.

---

[6] The exception that an equity court has inherent power to allow expenses, including attorney's fees, to persons acting to save or preserve property not merely for themselves but as "quasi trustees" for the benefit of others interested in the property, see Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. (2d) 360, is not in point.

[7] Miller v. Miller, 186 Okla. 566, 99 P. (2d) 515, certiorari denied, 311 U. S. 645, 61 S. Ct. 9, 85 L. ed. 411, cited by plaintiff, is grounded upon a statute specifically allowing suit money in actions for alimony alone. See, Spradling v. Spradling, 74 Okla. 276, 181 P. 148.